CASE No. 956.

## STATE v. BROWN.

1. County commissioners may require road hands to open a new road, and a refusal to obey without proper excuse, is a misdemeanor, cognizable by a trial justice's court.
2. A road worker cannot excuse his default by the objection that the road ordered to be opened will injuriously affect the constitutional rights of the owners of the land through which it passes, the land-owners themselves making no complaint.
3. No formal indictment is required in a trial justice's court.
4. Where an appeal is taken from the sentence of a trial justice to the Court of General Sessions, the case should not be heard *de novo.*

---

Before ALDRICH, J., Hampton, March, 1880.

The case is fully stated in the opinion of the court.

*Mr. W. S. Tillinghast,* for appellant.

*Mr. Solicitor Gantt,* contra.

January 10th, 1881. The opinion of the court was delivered by

McGowan, A. J. The defendant was tried in a court of trial justice for failing to work *in opening a new road* in Hampton county, found guilty and sentenced to pay a fine of $5 or be committed for twenty days. He appealed to the Court of General Sessions, and a trial was there had *de novo* before a jury. No indictment was found, but the case was tried on the warrant of arrest, which, with the verdict and sentence, came up from the trial justice's court, and did not allege that the offence was committed "*contra formam statuti;*" but, after stating the charge plainly, commanded the constable, as follows: "These are therefore to command you to apprehend the said Charles Brown and bring him before me to be dealt with according to law." Citizens were summoned from an area of ten miles around to open the new road, of whom the defendant was one. A motion was made to quash the proceeding, which the Circuit judge refused, and submitted the case to a jury upon the facts, who found the defendant guilty, and the judgment was "sentence of trial justice is confirmed with additional costs of appeal."

The defendant appeals, and renews his motion in this court upon the following exceptions:

"1. That the warrant or information was entirely insufficient in law, in that there was no allegation in the same that the charge was committed against any law, or contrary to the form of any statute.

"2. That the county commissioners, or any one of them, are not authorized to appoint a warner, or by themselves to summon citizens of the county living within the area of ten miles to *open new highways,* and if they had, the act of 1874, Section 4, under which defendant was tried, applied solely to failure or refusal to work *existing highways,* and not to the construction or opening of new ones."

We will first consider the last exception, which makes the

point that the conviction was erroneous for the reason that the county commissioners had no right to warn out persons liable to do road duty to *open a new road*, but only to repair old ones.

By the act of 1874 " to amend Chapter XLV., of Title XI., Part I., of the general statutes relating to the repair of highways and bridges," it is provided " if any person of the legal age refuse to work upon the highways and roads (having no justifiable excuse) according to the direction of the overseer, he shall be deemed guilty of a misdemeanor, and upon conviction thereof in a trial justice's court, shall be fined in a sum not less than $5 nor more than $10, or be imprisoned in the county jail, for a period of not less than five nor more than twenty days." 15 *Stat.* 784.

The question is whether the defendant was properly convicted under this act for refusing, when warned by authority of the county commissioners, to work in *opening a new road*. If not, it is difficult to understand how new roads could be opened.

Article IV., Section 19, of the constitution declares that " the qualified electors of each county shall elect three persons for the term of two years, who shall constitute a board of county commissioners, which shall have jurisdiction over roads, highways, ferries, bridges, and in all matters relating to taxes, disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties," &c.

In 1868, an act was passed delaring that " the boards of county commissioners have power, and they are hereby authorized to appoint special commissioners to lay out public highways in those cases where they shall be satisfied· that the road applied for is important : *provided, however*, that the said commissioners shall have no power to open any new road until they shall have given three months previous notice by advertisement in the settlement through which the intended road is to be opened.  *  *  *  The roads so to be laid out by such special commissioners, or the same as settled on appeal, shall be recorded, *opened and worked* as public highways of the towns, cities or counties in which they are respectively situated, in the same manner as other highways of the town, city or county are required by law to be recorded, opened and worked."    *Gen. Stat.* 265.

The same provisions, substantially, are re-enacted in the act of 1875, " to reduce all acts and parts of acts in relation to county commissioners, their powers and duties, into one act and to amend the same." 15 *Stat.* 990. From these provisions there can be no doubt that the county commissioners have the right, upon giving notice as required, to have new roads laid out and opened and worked " as other highways of the town, city or county," and to require all persons liable to said duty to work in opening the same.

The argument drawn from Section 23, Article I., of the constitution, that " private property shall not be taken or applied for public use without the consent of the owner or just compensation being made therefor "is not well founded. It does not appear that any private property has been taken without the consent of the owner. There is no allegation that the county commissioners did not give notice in the settlement through which the road is to pass as the law requires. No land-owner is before the court objecting to the opening of the road. Until the contrary is made to appear, we assume that the county commissioners have complied with the law in all respects; and under these circumstances a road worker will not be heard to make objection, in order to escape the discharge of a public duty, that the constitional rights of other citizens through whose lands the proposed road runs, are injuriously affected by the opening of the road.

The trial justice had the same right to try a defaulter for refusing to work in opening a new road as for refusing to work in repairing an old road. So far as the court of trial justice is concerned we can see no fatal defect in the conviction either as to irregularity in the proceedings or as to the terms of the warrant, which directs the constable to arrest the defendant and " carry him before the trial justice, to be dealt with as required by law." In a trial justice's court no formal indictment " *contra formam statuti* " is necessary. All proceedings before trial justices in criminal cases shall be commenced on information under oath, plainly and substantially setting forth the offence charged—the information may be amended at any time before trial. All proceedings before trial justices shall be summary, &c. *Gen. Stat.*

196. The conviction of the defendant in the court of the trial justice must stand.

But it is urged in the first exception that the warrant or information was entirely insufficient in law, in that there was no allegation in same that the charge was committed against any law or contrary to the form of any statute. We have seen that this exception is not well taken so far as the court of trial justice is concerned, but it may be different as to the trial of the appeal in the Court of Sessions. It appears that the Circuit judge did not decide the case himself, nor have an indictment found by the grand jury, but simply referred it to the jury on the papers as they came from the trial justice. It is not clear what should be the character and form of the proceeding in the Circuit Court upon an appeal from a conviction in a trial justice's court. The act of 1870 provides that "every person convicted before a trial justice of any offence whatever, and sentenced, may appeal from the sentence to the next term of the Court of General Sessions for the county. The appellant shall be committed to abide the sentence of the said court    *    *    *    until the final decree, sentence or order of the court therein, and to abide such final sentence, order or decree," &c. *Gen. Stat.* 748. The words "final decree, sentence or order" indicate that the appeal should be heard by the Circuit judge sitting in an appellate character. It was clearly error to try the case *de novo.* Without a formal indictment "no person shall be held to answer in any court for an alleged crime or offence, unless upon an indictment by a grand jury, except in the following : *First.* Where a prosecution by information is expressly authorized by statute. *Second.* In proceedings before a police court *or trial justice ;* and, third, in proceedings before court martial." *Gen. Stat.* 708.

Since this case was heard the legislature has passed an act in conformity with these views, providing in Section 6, "that the said appeal shall be heard by the Court of General Sessions on the grounds of exceptions made, and upon the papers hereinbefore required, and without the examination of witnesses in said court. And the said court may either confirm the sentence appealed from, reverse or modify the same, or grant a new trial, as to the said court may seem meet and conformable to law.

The judgment of the Circuit Court is set aside, and the case remanded, that the appeal from the trial justice may be heard according to law.

SIMPSON, C. J., and McIVER, A. J., concurred.