STATE v. WILLIAMS.

1. CONSTITUTION—JURIES—INFERIOR COURTS.—A Constitution is to be construed in the light of the then existing law; and inasmuch as the Constitutions and laws prior to the adoption of the Constitution of 1868 provided for the trial of trivial misdemeanors otherwise than by a jury of twelve men, and this Constitution itself provided for the trial of such cases "summarily before a justice of the peace or other officer authorized by law, on information under oath, without indictment or intervention of a grand jury," a legal trial and conviction for an offence, the punishment of which is imprisonment for not more than thirty days, or a fine not exceeding one hundred dollars, may be had under the statute before a trial justice and a

jury of six men, or without jury, if such jury be not demanded, notwith-standing the other provisions of that Constitution securing the right of trial by jury.

2. IBID.—IBID.—IBID.—APPEAL.—The right of appeal given by the Constitu-tion to persons convicted in an inferior court does not give the right of a trial *de novo* by a jury of twelve men in the Circuit Court, to which the appeal is taken.[1]

3. IBID.—IBID.—IBID.—Contemporaneous construction of a Constitution is entitled to weight; and such construction of the present Constitution sus-tains the right of the State to try offenders before a trial justice without a jury of twelve men.

4. IBID.—INFERIOR COURTS—IMPRISONMENT—WORK ON STREETS.—Under the constitutional provision, the jurisdiction of trial justices is limited to offences less than felony, "in which the punishment does not exceed a fine of one hundred dollars, or imprisonment for thirty days." A statute which authorizes the trial justice to sentence a convict to hard labor on the streets during the term of his imprisonment adds an additional punish-ment, and is, therefore, unconstitutional and void. MR. JUSTICE POPE *dis-senting*.

Before IZLAR, J., Charleston, July, 1893.

This was a prosecution against Sam Williams for carrying a concealed weapon.

*Mr. Jervey*, solicitor, and *Mr. Charles Inglesby*, for the State, appellant.

*Mr. S. J. Lee*, contra.

February 20, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. In this case the defendant was carried before a judicial trial justice in and for the city of Charleston, charged with the offence of carrying a deadly wea-pon concealed upon his person. No jury having been demanded, the case was heard by the justice, without a jury, and the de-fendant having been found guilty, he was sentenced to pay a fine of twenty-five dollars, or to be imprisoned in the county jail, and made to perform hard labor on the public works of the city of Charleston, in the chain gang, for the period of

1 See note in 15 L. R. A., 441.

thirty days. From this judgment defendant appeals to the Court of Sessions upon two grounds: 1. That he cannot be punished except by the verdict of a jury of twelve men. 2. That the trial justice has no jurisdiction to impose any greater sentence than thirty days imprisonment; and so much of the sentence as requires the defendant to work on the chain gang, is void in law.

That appeal came on to be heard before his honor, Judge Izlar, who rendered judgment sustaining both of the grounds of appeal, and ordering the clerk to docket the case for trial at the next term of the Court of General Sessions. From this judgment the solicitor, in behalf of the State, appeals, upon the several grounds set out in the record, which make substantially but two questions: 1st. Whether the Circuit Judge erred in holding that the defendant was entitled to a trial by a jury composed of twelve men. 2d. Whether he erred in holding that so much of the sentence imposed by the judicial trial justice, as required the defendant to perform hard labor on the public works of the city of Charleston, in the chain gang, for the period of thirty days, was null and void, as without the authority of law.

It is conceded that, so far as the questions raised by this appeal are concerned, the same law which applies to an ordinary trial justice applies also to a judicial trial justice in the city of Charleston, and, therefore, the case may be considered as though it had arisen in the court of an ordinary trial justice.

The defendant bases his right to a trial by a jury of twelve men upon sections 11, 13, and 14 of article I. of the Constitution of 1868. Section 11 is in these words: "The right of trial by jury shall remain inviolate." Section 13 provides, amongst other things, that every person held to answer for any crime or offence, shall have the right to have "a speedy and public trial by an impartial jury;" and section 14 forbids the enactment by the General Assembly of any law "that shall subject any person to punishment without trial by jury." And the contention on the part of the defendant is, that the right of trial by jury thus secured means a trial by a common law jury, a jury composed of twelve men, and, there-

fore, that the legislature has not now any power to provide for
the trial of a person charged with any criminal offence by a
jury composed of any less number than twelve. But as is well
said by Judge Cooley in his great work on Constitutional Lim-
itations, at page 60 of the 2d edition : "Constitutions are to be
construed in the light of the common law, and of the fact that
its rules are still left in force. By this we do not mean that the
common law is to control the Constitution, or that the latter is
to be warped and perverted in its meaning, in order that no
inroads, or as few as possible, may be made in the system of
common law rules, but only that for its definitions we are to
draw from that great fountain; and that, in judging what it
means, we are to keep in mind that it is not the beginning of
law for the State, but that it assumes the existence of a well
understood system, which is still to remain in force and be ad-
ministered, but under such limitations and restrictions as that
instrument imposes."

In determining, therefore, what the several constitutional
provisions referred to mean, and keeping in mind the fact that
the present Constitution is not the beginning of law for the
State, but that it assumes the existence of a well understood
system, still to remain in force, except in so far as it is altered
by the provisions of the Constitution of 1868, it is but natural
to inquire what was the system previously in existence, so far as
the right of trial by jury is concerned, and whether any alter-
ations therein have been made by the provisions of the present
Constitution. The fundamental law which was in existence at
the time of the adoption of the Constitution of 1868, was the
Constitution of 1865, which in section 7 of article IX., after de-
claring that "the trial by jury, as heretofore used in this State,
and the liberty of the press, shall be forever inviolably pre-
served," expressly declared that "the General Assembly shall
have power to determine the number of persons who shall con-
stitute the jury in the Inferior and District Courts." And in
pursuance of this provision the General Assembly did, by the
several acts of 1865 and 1866, provide for juries in the District
Courts consisting of less than twelve persons, which, in the
case of *State* v. *Starling*, 15 Rich., 120, were held to be legal

juries.  And it is noticeable that while that distinguished jurist, Mr. Justice Wardlaw, in the able and learned opinion prepared by him in that case, discusses at some length the law relative to jury trial, he nowhere distinctly specifies the number twelve as essential to the constitution of a jury.

It is true, that in Starling's case the *decision* was based upon the express provision of the Constitution of 1865, above quoted, which is not found in the Constitution of 1868, and the case cannot be regarded as authority upon the question now under consideration, yet it is referred to as containing a comprehensive review of the legislation of this State under the Constitution of 1790, which contained a provision that "the trial by jury, as heretofore used in this State, and the liberty of the press, shall be forever inviolably preserved," as well as of the decisions of our courts upon that subject.  From these decisions Wardlaw, J., draws, amongst others, the following inferences: "Second, that whenever a proceeding was found to have been sanctioned by law that existed at the adoption of the Constitution of 1790, it was allowed to prevail, however invasive of jury trial it may have been.  Third, that proceedings without jury existing before 1790, served to authorize analogous proceedings subsequently directed; for instance, a justice of the peace had a certain summary jurisdiction; therefore, the same could be given to the recorder of Charleston," &c.

Inasmuch, therefore, as the law as it stood at the time of the adoption of the Constitution of 1868, plainly recognized the right of the General Assembly to determine the number of persons who shall constitute the jury, not only in the District Courts but also in the Inferior Courts, it is clear, upon the principles above stated, that a trial by a jury of less than twelve, should still be recognized in the Inferior Courts, "however invasive of jury trial" it may seem to be, unless there is some provision in the present Constitution which forbids the General Assembly from exercising a right previously conferred and actually exercised under the law as it existed at the time of the adoption of the Constitution of 1868.  We do not find anything in the present Constitution which forbids the General Assembly, in express terms, from exercising the right to deter-

mine the number of persons which shall constitute a jury in the Inferior Courts, nor do we think that such a prohibition is necessarily implied by any provision of the Constitution. On the contrary, the provisions of section 19 of article I. plainly implies that cases of the class to which the present case belongs may be tried by a justice of the peace or other inferior officer (held in *State* v. *Fillebrown,* 2 S. C., 404, to embrace trial justices), even without a jury. For the language of that section is, that cases of the character there referred to "shall be tried summarily before a justice of the peace or other officer authorized by law, on information under oath, without indictment or intervention of a grand jury, saving to the defendant the right of appeal;" and the word "summarily" implies a trial without a jury. In 2 Rap. & Law. L. Dict., 1236, it is said : "In criminal cases summary proceedings are those which may be had and concluded before a magistrate or justice of the peace, as opposed to regular proceedings by indictment or information and trial by a jury." And in Anderson's Law Dict. it is said, referring to summary proceedings : "The term is also applied * * * to hearings and determinations of charges of the lighter misdemeanors by committing magistrates without the intervention of a jury," &c. So, also, the word "summary," as used in the above quotation from Starling's case, is manifestly used by Wardlaw, J., as implying a trial without a jury.

It is urged, however, that the clause in section 19 of article I. of the Constitution, "saving to the defendant the right of appeal," secures to the defendant convicted before a trial justice the right to a trial by a jury, and is, therefore, in harmony with the preceding sections securing, in express terms, the right of trial by jury. This view is based upon the assumption that the right of appeal to the Court of Sessions carries with it a right to a trial *de novo* in the latter tribunal where a jury can be obtained. But, as it seems to us, this assumption is altogether inconsistent with the fundamental idea of the word appeal, which necessarily involves the idea of a review of the proceedings had in a trial which has already been had, and not a new trial of the case. Indeed, properly speaking, the hearing of an appeal is no part of the trial, and

hence, as was held in *State* v. *David*, 14 S. C., 428, the presence of the accused was not necessary at the hearing of an appeal. But we need not pursue this subject, for it has been expressly held in *State* v. *Brown*, 14 S. C., 380, that where an appeal is taken from the sentence of a trial justice to the Court of Sessions, it was error to try the case *de novo.* It follows, therefore, that the clause in section 19 of article I. of the Constitution, saving the right of appeal to a defendant convicted before a trial justice, cannot have the effect of securing to the accused the right to a trial by a jury of twelve men.

Contemporaneous construction may also be resorted to, for the purpose of sustaining the view which we have adopted; and that this may be legitimately resorted to, can be seen by reference to that great work, Cooley's Constitutional Limitations, at page 67 of the 2d edition, as well as by reference to our own cases. In *Gregier* v. *Bunton*, 2 Strob., at page 495, Judge Evans, in speaking of this same subject—the constitutional guaranty of the right of trial by jury—uses this language: "When, therefore, we find that an interpretation has been put upon this clause by those who lived at the same time, and probably by many of those who were members of the convention, and that this construction has never been called in question for a long time, more than half a century in this case, it is a very strong argument in favor of its correctness, and may be, and ought to be, adopted, unless it is palpably wrong." The same doctrine may be found more elaborately set forth in *Simpson* v. *Willard*, 14 S. C., 191. Looking, then, to this source for light upon the question now under consideration, we find that the very first legislature which assembled after the adoption of the present Constitution, which, as matter of history, it is known, was composed in large part of the same persons who sat in the convention which framed the Constitution, passed "An act to provide for the temporary appointment of magistrates, and to define their powers and duties" (act of 24th September, 1868, 14 Stat., 99), in which provision is made for a jury composed of only six persons. Again, by the act of March 1st, 1870, 14 Stat., 403, trial justices were invested with "jurisdiction of all offences which may be subject to the penal-

ties of either fine or forfeiture not exceeding one hundred dollars, or imprisonment in the jail or work house not exceeding thirty days ;" and in the 10th section of the same act the same provision as to juries was made as had been made in the previous magistrates' act, where a jury is demanded.    These provisions of the act of 1870 were carried into the Revised Statutes of 1872, and were again carried into the revision of 1882 without alteration.    See General Statutes, sections 831 and 842.    And thus the statute law remains to the present day.

So that it appears, that ever since the organization of the government under the present Constitution, the General Assembly has uniformly, without challenge, so far as we are informed, down to the present case, acted upon the theory that it still retained the right, existing at the time of the adoption of the Constitution of 1868, of determining the number of persons who should compose a jury in the inferior courts of the State, and have uniformly exercised that right, at least in the Trial Justice Court, from time to time, as occasion required. So that it seems to us that the General Assembly still has the power to provide for the trial of any person accused of an offence, within the jurisdiction of a trial justice, by a jury composed of a less number than twelve persons, and that the Circuit Judge erred in holding otherwise.   It is to be observed that the provisions of section 19 of article I. of the present Constitution do not seem to contemplate a trial by jury of persons accused of the offences there provided for, but the legislature, by section 831 of General Statutes, has provided that such persons "shall be entitled, on demand, to a trial by jury ;" and in this case it appears from the report of the judicial trial justice, as incorporated in the judgment of the Circuit Judge, that no jury was demanded by the defendant.

As to the second question presented by this appeal, we agree with the Circuit Judge, that so much of the sentence imposed by the judicial trial justice as required the defendant "to perform hard labor on the public works of the city of Charleston in the chain gang," was without authority of law, and is, therefore, null and void.    As we have seen above, the jurisdiction of trial justices in criminal cases is limited by

the Constitution (section 19 of article I.) to the trial of offences
"less than felony, and in which the punishment does not exceed
a fine of one hundred dollars or imprisonment for thirty days."
Now it is clear, as was held in *State* v. *Jenkins*, 26 S. C., 121,
that the jurisdiction of a trial justice is limited by and depend-
ent upon two conditions: 1st, that the offence in question shall
be less than felony; and 2d, that the punishment prescribed
shall not exceed a fine of one hundred dollars or imprisonment
for thirty days. If, therefore, either of these conditions are
wanting in a given case, the trial justice is without jurisdiction.
But in this case neither of these conditions was wanting, for by
the last act providing the punishment for the offence with which
the defendant was charged, it was limited "to a fine not to exceed
one hundred dollars or to imprisonment for a term not exceed-
ing thirty days." See act of 24th December, 1892, 21 Stat., 93.
Now, as was held in *State* v. *Hord*, 8 S. C., 84, affirmed in *Ex
parte Bond*, 9 *Id.* 80: "Wherever imprisonment was the pun-
ishment, in whole or in part, for a common law offence, or
prescribed for the violation of some statutory enactment, it
took effect by a commitment to, and detention in, the common
jail or prison of the county."

This may be regarded as an authoritative interpretation of
the proper signification of the term "imprisonment," as used
in the Constitution. Accordingly it was held in that case that
a person convicted of a misdemeanor—assault with intent to
kill—could not be sentenced to confinement in the State peni-
tentiary at hard labor, unless such punishment had been pre-
scribed by some statute substituting that mode of imprisonment
in place of the one which had always existed in the State. In
view of that decision, doubtless, the General Assembly passed
the act of 1878, now incorporated as section 2615 of the General
Statutes, declaring that: "In every case in which imprisonment
is provided as the punishment, in whole or in part, for any
crime, such imprisonment shall be either in the penitentiary,
with or without hard labor, or in the county jail, with or without
hard labor, at the discretion of the Circuit Judge pronouncing
the sentence." But this provision, by its terms, applies only
to the Court of Sessions—a court of general jurisdiction—and

cannot apply to a court of inferior and limited jurisdiction; for surely it cannot be contended that the legislature can, by a mere statute, enlarge the meaning of the term "imprisonment," as used in the Constitution, especially where it is there used as one of the limits to the jurisdiction of an inferior court.

So that we think it clear that the act of 1885, 19 Stat., 125, as amended by the act of 20 December, 1892 (21 Stat., 22), under which the power is claimed to add to the sentence of imprisonment the requirement of hard labor on the public works of a city or county, in so far as it purports to confer upon a trial justice the power to add to a sentence of imprisonment the requirement of such hard labor, must be regarded as unconstitutional and void. It is very manifest that this additional imposition exceeds the limits prescribed by the Constitution in defining the jurisdiction of a justice of the peace, "or other officer authorized by law," and hence the trial justice, in imposing this additional punishment upon the defendant, acted without the authority of the law, and hence so much of the sentence as exceeded the prescribed limits must be regarded as null and void.

The judgment of this court is, that so much of the judgment of the Circuit Judge as adjudged that the defendant was entitled to a trial by twelve men, be reversed; but that so much of said judgment as adjudged that so much of the sentence imposed by the judicial trial justice as required the defendant "to perform hard labor on the public works of the city of Charleston, in the chain gang," was null and void, be affirmed; and that the case be remanded to the Court of Sessions for the County of Charleston, with instructions to confirm the sentence as herein modified.

MR. JUSTICE POPE. I find no difficulty in reaching the conclusion of the other members of the court on the first ground of appeal, but I regret my inability to concur in the views announced on the second ground of appeal. It seems to me that the word imprisonment should be so construed as to include *the employment* of the person convicted during his imprisonment. It is nowhere, in the sentence pronounced by the judicial trial

justice of Charleston, provided that any longer term of impri-
sonment than thirty days shall be endured by the prisoner, nor
does it appear that such imprisonment shall be in any other
place than the county jail; but it is provided that he shall be
*employed* while so imprisoned in labor on the streets of the city
of Charleston on the public works of said city. Where is there
any incompatibility with the provisions of our State Constitu-
tion? Suppose the General Assembly of this State had provided
a general law, that, after its passage, any person convicted in
a trial justice court in this State, and sentenced to imprison-
ment in the county jail, should be employed by the sheriff
while so confined in knitting socks, plaiting door mats, or any
other kindred work, I apprehend that thereafter such law
would apply, and would be considered as included in the sent-
ence, "or imprisoned for thirty days in the county jail." What
difference should it make if the trial justice actually included
in his sentence, "or be imprisoned in the county jail, to be
*employed* while there in such work as prescribed by the statute
of this State, under the direction of the sheriff." If that con-
clusion be just, what illegality can be said to attach to a sent-
ence of imprisonment for thirty days at hard labor in a chain
gang on the streets of the city of Charleston on the public works
of that city, such sentence being in conformity to an act of the
General Assembly of this State? It is difficult for me to see
any difference. Hence my inability to concur generally in this
opinion. And I may add, in conclusion, my regret at being
unable, for want of time, to elaborate the views here imper-
fectly presented.

Judgment modified.